## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

EDWIN BLADIMIR ESCOBAR,          *

Plaintiff,                       *

v.                               *          Civil Action No. RDB-19-2717

STEPHEN T. MOYER,                *
COREY T. HOLLAND, and
COII DANIEL ARNDT,               *

Defendants.                      *
                                ***

## MEMORANDUM OPINION

Self-represented plaintiff Edwin Bladimir Escobar brought this civil action pursuant to 42 U.S.C. § 1983 against Stephen T. Moyer, former Secretary of the Department of Public Safety and Correctional Services, and Eastern Correctional Institution ("ECI") correctional officers Corey Holland and Daniel Arndt.  In his Complaint, as amended, Escobar asserts a violation of his constitutional rights arising from Defendants' use of excessive force as well as a violation of Maryland state law.  ECF Nos. 1, 5.  As relief, he seeks monetary damages.  ECF No. 5 at 8.

On March 6, 2020, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment supported by numerous exhibits.  ECF No. 15.  On April 6, 2020, Escobar filed a response in opposition.  ECF No. 17.  A hearing is not necessary.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons explained below, the Court will DISMISS Escobar's claims against Moyer and GRANT the remaining Defendants' Motion, construing it as one for summary judgment.[1]  Accordingly, Summary Judgment is entered in favor of Defendants Holland and Arndt

---

[1] Defendants' dispositive submission will be treated as a Motion for Summary Judgment under Federal Rule of Civil Procedure 56 because materials outside the original pleadings have been considered. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

and against Escobar.

## Background

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). The Court may consider only such sources outside the complaint that are, in effect, deemed to be part of the complaint, for example, documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

Escobar alleges that at approximately 8:45 a.m. on June 15, 2017, while he was incarcerated at ECI, he and his cellmate were ordered out of their cell by Officers Holland and Arndt during a cell search.  Complaint, ECF No. 1 at pp. 1-2; Amended Complaint, ECF No. 5 at pp. 5-6.  Escobar and his cellmate were handcuffed behind their backs and escorted to a nearby recreation area so that the officers could conduct a strip search.  *Id.*  Escobar claims that he complied with Officer Holland's orders, but Officer Holland began punching and kicking him repeatedly, without justification, while laughing.  *Id.*  Officer Holland then began choking him while Officer Arndt came over and "began punching and kicking him in an effort to assist defendant Holland."  ECF No. 5 at p. 6.  Because Escobar could not breathe, he bit Officer Holland on the lower right arm, causing Officer Holland to release his "choke hold."  *Id.*

Escobar claims that as a result of the excessive force used by Officers Holland and Arndt, he suffered injuries to his head, neck, lower back, arms, and legs, as well as a shock to his central nervous system and continued mental anguish.[2]  ECF No. 5 at p. 6.  He also argues that the acts

---

[2] In his initial Complaint, Escobar alleged that after the incident, he was "placed in administrative

and omissions of Officers Holland and Arndt violate Maryland criminal statutes that prohibit assault in the second degree and common law battery.  ECF No. 5 at pp. 7-8.

In a Notice of Inmate Rule Violation reported on June 16, 2017, Officer Holland stated that on June 15, 2017, he and Officer Arndt conducted a search of Escobar's cell after receiving a note stating that Escobar was in possession of a weapon.  Holland Notice, ECF No. 15-5 at p. 1.  Officers Holland and Arndt entered the cell at approximately 8:20 a.m., announced that they would be conducting a cell search, and ordered both inmates to remain on their bunks.  *Id.*  Escobar's cellmate arose from his bunk and was handcuffed without incident, while Escobar was given an order to stop moving before he came down from his bunk to be handcuffed.  *Id.*  According to a Notice of Inmate Rule Violation reported by Officer Arndt, Escobar had pulled the sheet of his bunk over his body and began to move his hands underneath of his body.  Arndt Notice, ECF No. 15-7 at p. 1.

Both inmates were escorted to the dayroom where Officer Holland conducted a quick search of the seating area before proceeding with a strip search of Escobar.  ECF No. 15-5 at p. 1.  Escobar was ordered to place his hands on the wall and to remove one piece of clothing at a time.  *Id.*  After removing his shirt, Escobar placed his hands near his crotch area, and Officer Holland ordered him to place his hands on the wall.  *Id.*  When Escobar did not comply, Officer Holland gave him a second order to place his hands on the wall, and Escobar complied with that order.  *Id.*

---

detention housing where he was kept naked, given no sheets, blankets, towels, wash cloths, toilet paper, soap, toothpaste, toothbrush, or eating utensils."  ECF No. 1 at p. 2.  He also claimed that his efforts to "timely and efficiently utilize the . . . Administrative Remedy Procedure process was deliberately thwarted and impeded."  *Id.*  In his response in opposition to Defendants' Motion, however, he asks the Court to disregard and strike these claims as "impertinent, immaterial, irrelevant" to the allegations made in his Amended Complaint.  Response, ECF No. 17-1 at pp. 2-3.  Therefore, the Court shall construe Escobar's statement as a notice of voluntary dismissal of any conditions of confinement and due process claims. Because a responsive pleading has been filed, Escobar is forewarned he may be required to pay the costs of this action prior to refiling against these Defendants pursuant to Fed. R. Civ. Proc. 41(d).

Officer Holland then ordered Escobar to remove his shorts and hand them to Officer Arndt.  *Id.*

Upon discovering a homemade sheath wrapped in the shorts, Officer Arndt asked Escobar if he

had a weapon on him, to which Escobar replied: "there's no knife, it's my pencil holder."  *Id.*  At

that point, Escobar placed his hands near his crotch area again and disregarded Officer Holland's

orders to place his hands on the wall.  *Id.*  Escobar then turned towards Officer Holland in an

aggressive manner.  *Id.*

      The officers put Escobar against the wall and repeatedly directed him to place his hands on

the wall.  *Id.*  Escobar did not comply and instead attempted to "maneuver himself," causing

Officer Holland to take him down to the floor. *Id.*  Escobar continued to struggle, and he bit Officer

Holland's lower right arm.  *Id.*  When Officer Holland told Officer Arndt that Escobar was biting

him, Officer Arndt placed his hand on Escobar's forehead and pulled his face away to release

Officer Holland's arm.  *Id.*  Officer Holland directed Escobar to place his hands behind his back

to be handcuffed, but he did not comply.  *Id.*  At that time, another officer arrived and assisted in

getting Escobar handcuffed.  *Id.*

      Once Escobar was handcuffed, Officers Arndt and Holland left the area,[3] and Escobar was

taken by four other officers to the medical department. *Id.*  Upon arriving in the medical

department, at approximately 8:42 a.m., Escobar was seen by Kimberly Malin, R.N.  Medical

Records, ECF No. 15-6 at p. 9.  Nurse Malin noted that Escobar had bitten an officer during a use

of force and was irritable.  *Id.*  When Nurse Malin asked if she could take his vitals and assess him,

Escobar did not answer and was breathing heavily.  *Id.*  Nurse Malin noted that his lower lip was

bleeding but she was unable to assess his teeth, tongue, or gums.  *Id.*  Escobar had blood under his

right earlobe and no evidence of any abrasions or laceration, while the top corner of his left ear

---

[3] Officer Holland was notified that he had to be seen by medical personnel outside of the institution. ECF No. 15-5 at p. 1.

had a "scratched abrasion" with no bleeding. *Id.* There was a bruised area on the top of his head

in the center that was approximately two inches in diameter. *Id.* Nurse Malin noted that when she

attempted to clean off Escobar's lower lip, he began to "stare [her] down," causing her to be fearful

because he had just bitten an officer. *Id.* Nurse Malin also noted that Escobar refused all medical

care at that time. *Id.*

Officer Arndt states that after Escobar was taken to medical, he returned to the cell with

another officer and began a cell search. ECF No. 15-7 at p. 1. While searching the top bunk where

Escobar had been laying, Officer Arndt found a one-inch slit in the mattress containing a six-inch

long knife-style homemade weapon. *Id.* The weapon, which was fashioned from a piece of angled

locker metal that was sharpened to a fine point on one end and wrapped in paper and tape on the

other end to serve as a handle, was the exact shape and length to fit inside of the sheath that was

discovered on Escobar. *Id.* Officer Arndt took three photographs of the weapon and sheath on the

day of the incident at 11:30 a.m., a Chain of Custody Log was prepared, and the weapon and sheath

were released to the evidence locker at 2:45 p.m. that same day. *Id.* at pp. 4-5.

Escobar was charged with violations of inmate rules #101 (assault or battery on staff), #105

(possession of a weapon), #312 (interfering with and resisting the duties of staff), #400 (disobeying

a direct lawful order), #405 (disrespect, vulgar language), and #408 (misuse, alteration, tampering

with, damaging or destruction of any property, tool, or equipment to include possession of any

property in an hazardous condition). ECF No. 15-5, 15-7. At the adjustment hearing held on

August 7, 2017, Escobar pled "not guilty" to all of the charges. ECF No. 15-5 at p. 11. The

Adjustment Hearing Officer subsequently found Escobar guilty of all rule violations except #405.

*Id.* at pp. 12-13, 15. Due to a poor adjustment history, Escobar received 220 days of disciplinary

segregation for violation of rule #101, a credit revocation of 180 days, and a mandatory indefinite

suspension of visits for that rule violation.  *Id.*  Escobar filed an adjustment appeal that same day, and on August 14, 2017, the ECI Warden affirmed the hearing officer's decision and sanctions. *Id.* at pp. 4-8, 17-18.

The June 15, 2017 incident was also reported to the Intelligence and Investigative Division ("IID") both as a result of Officer Holland's intent to pursue criminal charges against Escobar and Escobar's allegation that that he was assaulted by the officers. *See* ECF No. 15-9, 15-23. Following separate investigations, Escobar was charged with one count of second-degree assault of a Division of Correction ("DOC") employee.  ECF No. 15-9 at pp. 9, 47-52.  The investigation into Escobar's allegation was closed after finding that there was no evidence that DOC staff used unreasonable or excessive force during the incident.  ECF No. 15-23 at p. 10.

On August 8, 2017, the Warden's Office received ARP ECI-2072-17, in which Escobar complained that on June 15, 2017, he was beaten by correctional staff and thereafter submitted sick call slips relating to his injuries to no avail.  ARP Request, ECF No. 15-32.  That same day, the ARP was dismissed for procedural reasons as final because the incident was referred to IID. *Id.*  On December 26, 2017, Escobar submitted ARP ECI-3307-17, alleging that Officers Holland and Arndt used excessive force against him on June 15, 2017.  Second ARP Request, ECF No. 15-33.  That ARP was dismissed for procedural reasons as final on December 29, 2017, because the ARP was not received within the established time frames.  *Id.*

On February 23, 2018, Escobar received an additional five-year term of confinement to be served consecutive to his current criminal sentence after having been found guilty of second-degree assault on a DOC employee.  *See* Commitment Record, ECF No. 15-34.

**Standards of Review**

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Hous., LLC v. The City of Salisbury, Maryland*, 672 F. App'x. 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

7

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015).

Because he is proceeding pro se, Plaintiff's submissions are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, this Court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted).

## Discussion

Defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(6) or summary judgment under Rule 56. With regard to claims that have not been voluntarily dismissed by Escobar, Defendants argue that: (1) Escobar fails to state an Eighth Amendment claim of use of excessive force; (2) there is no respondeat superior liability and no facts alleged against Defendant

Moyer, thus entitling him to dismissal; and (3) Defendants are protected by qualified immunity. ECF No. 15-2.

## I.     Officers Holland and Arndt

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016). To establish an Eighth Amendment violation, an inmate must establish both that the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation. *Williams v, Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

To satisfy the objective level of harm, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 37 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) (internal quotation marks omitted).

The subjective element requires evidence that prison personnel used force "maliciously or sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In evaluating this element, a court should consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 321) (internal quotation marks omitted).

Viewing the facts in the light most favorable to Escobar, it appears that he was subjected to a strip search following a report that he was in possession of a weapon.  Defendants state that during the search, Escobar was recalcitrant, aggressive, and uncooperative, while Escobar states in his verified Amended Complaint that he complied with Officer Holland's order, but he was punched and kicked without justification.  It is undisputed, however, that Escobar bit Officer Holland's arm during the struggle, causing Officer Holland to seek help from Officer Arndt in restraining him.  Thereafter, Escobar was taken directly to the medical unit, where he was immediately assessed by a nurse.

During the medical examination, the nurse noted that Escobar's lower lip was bleeding, he had blood under his right earlobe with no evidence of any abrasions or laceration, and the top corner of his left ear had a scratched abrasion with no bleeding.  Although Escobar had a bruise on the top of his head, he refused all medical care.  *Id.*  The undisputed evidence does not support Escobar's allegation that Officers Holland and Arndt used force maliciously or sadistically.  Rather, Escobar's minor injuries are consistent with a struggle between custody staff and a combative inmate who was resisting orders.  Thus, it appears that any force used by the officers was applied in a good faith effort to maintain or restore discipline.

The entire incident –from the time officers entered Escobar's cell to the time he arrived in the medical unit– lasted approximately 22 minutes.  The Court agrees with the IID that during that time, the correctional officers used only the necessary amount to force to gain control of Escobar, who was recalcitrant and aggressive.  Because Escobar does not meet his burden to identify evidence that shows that a genuine dispute of material facts exists to support a claim of cruel and unusual punishment, Officers Holland and Arndt are entitled to summary judgment on his excessive force claim.

II.     **Defendant Moyer**

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from citizen suits in federal court absent state consent or Congressional action.  *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself.  *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).  The State of Maryland has not waived such immunity for claims brought pursuant to § 1983.  Accordingly, Defendant Moyer is immune from suit for actions taken in his official capacity.

As to actions taken in his individual capacity, Escobar fails to allege any facts against Moyer.  *See* ECF No. 5.  Moyer cannot be held liable simply because he occupied a supervisory position, as the doctrine of respondeat superior does not apply to § 1983 claims.  *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).  A supervisory official cannot be held liable for the acts of a subordinate unless the supervisor's "indifference or tacit authorization of subordinates' misconduct" can be deemed to have caused the injury to the plaintiff.  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  For a supervisor to be found liable for such acts, a plaintiff must prove that (1) the supervisor has actual or constructive knowledge that the subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the subordinate's misconduct; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *Id.*; *Shaw v. Stroud*, 13

F.3d 791, 799 (4th Cir. 1994).

Here, Escobar has not shown that his constitutional rights were violated.  In addition, his assertions do not demonstrate any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability.  *See Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (stating that "[g]enerally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse").  Nor has he put forward any evidence that Moyer is liable pursuant to *Monell v. Dep't of Soc. Servs. of the City of New York*, for unconstitutional actions taken pursuant to an official policy, custom, or practice.  436 U.S. 658, 690-91 (1978).

Accordingly, Escobar's claims against Moyer shall be dismissed.

### III.     State Law Claim

Escobar avers that the acts and omissions of Officers Holland and Arndt "violate Maryland criminal statutes which prohibit assault in the second degree and common law battery," and he invokes this Court's pendent jurisdiction to entertain his state law claims pursuant to 28 U.S.C. § 1367.  ECF No. 5 at pp. 7-8.  Section 1367(a) grants district courts "supplemental jurisdiction over all other claims that are so related to claims in the action within [the courts'] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Because Escobar's constitutional claim fails, the Court declines to exercise supplemental jurisdiction over his state law claim.  *See* 28 U.S.C. § 1367(c)(3).  The state common law claim is dismissed without prejudice so that Escobar may file suit in state court, if he chooses.

### Conclusion

Escobar's claims against Moyer and his state law claim are dismissed. The remaining

Defendants are granted summary judgment on Escobar's excessive force claims.[4]

      A separate Order follows.


_____4/29/2020_____         /s/_____
Date                                     RICHARD D. BENNETT
                                       UNITED STATES DISTRICT JUDGE

---

[4] In light of the court's ruling, an analysis of the Defendants' remaining arguments is not necessary.